No objections to this Report and Recommendation (the "R&R") have been received, and I therefore review it for clear error. Finding no error, clear or otherwise, I adopt the R&R as the decision of the Court. The Petition is denied. A certificate of appealability will not issue. The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

CATHY SEIBEL, U.S.D.J.

11/8/23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CHRISTOPHER LOPES,

Petitioner,

-against-

M. ROCKWOOD, SUPERINTENDENT,
GOUVERNEUR CORRECTIONAL FACILITY,

Respondent.
-------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

22 Civ. 07887 (CS)(JCM)

To the Honorable Cathy Seibel, United States District Judge:

Petitioner Christopher Lopes ("Petitioner"), proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on September 6, 2022 (the "Petition"). (Docket No. 2).[1] The District Attorney of Westchester County, on behalf of Respondent M. Rockwood ("Respondent" or the "State"), opposed the Petition on October 11, 2022. (Docket Nos. 9-10). Petitioner did not submit a reply. For the reasons set forth below, I respectfully recommend that the Petition be denied.

## I. BACKGROUND

### A. The Crimes, Trial and Sentence

Petitioner's conviction arises out of an incident that took place on October 23, 2016.[2] Early that morning, Petitioner was riding as a passenger in his friend's vehicle when it was

---

[1] A *pro se* prisoner's papers are deemed filed at the time he or she delivers them to prison authorities for forwarding to the court clerk. *See Houston v. Lack*, 487 U.S. 266, 270 (1988); *Walker v. Jastremski*, 430 F.3d 560 (2d Cir. 2005) (analyzing the "*Houston* prison mailbox rule"). Petitioner certified that his Petition was delivered to the prison authorities for mailing on September 6, 2022. (Docket No. 2 at 15). Consequently, and because the timeliness of the Petition is not challenged, the Court adopts Petitioner's date for this filing and all other filings discussed herein.

[2] The Court construes the evidence presented at trial in the light most favorable to the state. *See, e.g.*, *Murden v. Artuz*, 497 F.3d 178, 184 (2d Cir. 2007).

struck by another vehicle driven by Walter Aldana, the victim in this case. (Trial Tr.[3] at 488-92). When Mr. Aldana drove away from the scene of the accident, Petitioner and his friend gave chase until Mr. Aldana crashed into two other cars further down the road. Petitioner and his friend then exited their vehicle and approached Mr. Aldana's car. (*Id.* at 493). While his friend pulled Mr. Aldana out of the car, Petitioner rummaged around in the vehicle's trunk. He then joined his friend, and together they beat and robbed Mr. Aldana, who suffered a broken nose and laryngeal fracture during the assault. (*Id.* at 494-99; 815-20). At the same time, an eyewitness called 911 and reported the assault and robbery to the police. (*Id.* at 821-22). Police responded quickly and were on scene within a few minutes. Upon their arrival, officers found Petitioner restraining Mr. Aldana while raising his fist as if about to strike him. (*Id.* at 428-30, 447). The officers reported that Mr. Aldana appeared to have been badly beaten and was lying partially on the ground on the driver's side of the car when they arrived. (*Id.* at 423-25). Mr. Aldana told police that Petitioner's friend, who had blood on his clothing but no visible sign of injury, had just assaulted and robbed him. (*Id.* at 758). After the Police arrested Petitioner and his friend, they canvassed the area for evidence.

Petitioner was charged in the County Court for Westchester County, New York ("Westchester County Court"), with Assault in the First Degree, Robbery in the First Degree, Gang Assault in the Second Degree, and Robbery in the Second Degree. (Docket No. 10-1). Petitioner pleaded not guilty and, prior to trial, filed an omnibus motion seeking, *inter alia*, to suppress evidence police collected the night of the accident on the grounds that the police lacked probable cause to arrest him so the evidence collected incident to his arrest was inadmissible. (Docket No. 10-2). The Westchester County Court denied the motion after holding a hearing on

[3] "Trial Tr." refers to the transcript of Petitioner's trial, held from July 9 through 24, 2018. (Docket Nos. 11-1; 11-2; 11-3).

the omnibus motion ("Omnibus Motion Hearing"). (Docket No. 10-5). In denying the motion, the trial court held that the police had probable cause to arrest Petitioner at the scene of the accident based on Mr. Aldana's statement to officers at the scene, the 911 call, the presence of blood on Petitioner's friend's clothing, and an officer's testimony that he observed Petitioner ready to strike Mr. Aldana. (Docket No. 10-5 at 2-3, 4). The trial court reasoned that because the police had probable cause for Petitioner's arrest, the evidence collected thereafter was legally seized and admissible. (*Id.* at 4). The case proceeded to trial and Petitioner was convicted on all four counts. (Trial Tr. at 1229-31). Thereafter, he was sentenced, as a second felony offender, to: 9 years imprisonment for the First Degree Assault count; 9 years imprisonment for the First Degree Robbery count; 6 years imprisonment for the Second Degree Gang Assault count; and 6 years imprisonment for the Second Degree Robbery count—each to be served concurrently. (Sentencing Tr.[4] at 14-15).

**B. Direct Appeal**

Petitioner filed a direct appeal through counsel on September 22, 2021, arguing that: (1) the First Degree Assault and Robbery charges were duplicitous, (Docket. No. 10-6 at 32); (2) the Westchester County Court's probable cause determination was erroneous, so the evidence collected incident to Petitioner's arrest should have been suppressed, (*id.* at 35); (3) there was insufficient evidence to support his conviction, (*id.* at 48); and (4) the sentence imposed by the Westchester County Court was excessive, (*id.* at 50). By Decision and Order, dated April 6, 2022, the Supreme Court of the State of New York, Appellate Division, Second Judicial Department (the "Second Department"), vacated Petitioner's conviction for Assault in the First Degree, holding that it was "multiplicitous" in light of the First Degree Robbery charge, but

[4] "Sentencing Tr." refers to the transcript of Petitioner's sentencing hearing, held on December 12, 2018. (Docket No. 11-4).

otherwise affirmed Petitioner's conviction and sentence. *People v. Lopes*, 163 N.Y.S.3d 846 (2d Dep't 2022). As to Petitioner's probable cause argument, the Second Department held:

> Contrary to the defendant's contention, the hearing court properly determined that the police officers had probable cause to arrest him based upon a radio broadcast of a motor vehicle accident with a possible robbery and assault in progress, their observations of the defendant and the codefendant holding the complainant down and of the defendant cocking his arm as if to strike the complainant, the complainant's statement identifying the codefendant as one of the individuals who assaulted and robbed him, and the officers' observations of blood on the defendant's clothing.

*Id.* at 846 (citations omitted). As a result, the Second Department affirmed the Westchester County Court's denial of Petitioner's motion to suppress. Petitioner then sought leave to appeal the Second Department's decision to the New York Court of Appeals (the "Court of Appeals"), which was summarily denied on June 8, 2022. *People v. Lopes*, 171 N.Y.S.3d 432 (2022).

### C. The Petition

On September 6, 2022, Petitioner filed the instant Petition. (Docket No. 2). The State filed its opposition on October 11, 2022. (Docket Nos. 9, 10). No reply was filed. Construing the Petition broadly, *see Williams v. Kullman*, 722 F.2d 1048, 1051 (2d Cir. 1983) (holding that pleading requirements in habeas proceedings should not be "overly technical and stringent"), Petitioner asserts a single claim: that the State violated his Fourth Amendment right to be free from unreasonable searches and seizures by improperly introducing evidence at trial that was seized incident to his arrest. (Docket No. 2 at 5). In support of this argument, Petitioner attached a portion of the Statement of Facts from his counseled appellate brief filed in the Second Department. (*Id.* at 16-43).

## II. APPLICABLE LAW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death

Penalty Act of 1996" ("AEDPA"). *Harrington v. Richter*, 562 U.S. 86, 97 (2011). "Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254." *Visich v. Walsh*, No. 10 Civ. 4160 (ER) (PED), 2013 WL 3388953, at *9 (S.D.N.Y. July 3, 2013).[5] The procedural and substantive standards are summarized below.

**A. Exhaustion as a Procedural Bar**

A habeas petition may not be granted unless the petitioner has exhausted his claims in state court. *See* 28 U.S.C. § 2254(b). As the statute prescribes:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i) there is an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
> >
> > . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)–(c).

Exhaustion requires a prisoner to have "fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts." *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (internal quotations omitted). If a petitioner "cites to specific

[5] If Petitioner does not have access to cases cited herein that are available only by electronic database, then he may request copies from Respondent's counsel. *See* Local Civ. R. 7.2 ("Upon request, counsel shall provide the *pro se* litigant with copies of such unpublished cases and other authorities as are cited in a decision of the Court and were not previously cited by any party.")

provisions of the U.S. Constitution in his state court brief, the petitioner has fairly presented his constitutional claim to the state court." *Davis v. Strack*, 270 F.3d 111, 122 (2d Cir. 2001); *see also Reid v. Senkowski*, 961 F.2d 374, 376 (2d Cir. 1992) (even "a minimal reference to the Fourteenth Amendment" presents a federal constitutional claim to the state courts). A petitioner may fairly present his claim even without citing to the U.S. Constitution, by, *inter alia*: "(a) [relying] on pertinent federal cases employing constitutional analysis, (b) [relying] on state cases employing constitutional analysis in like fact situations, (c) [asserting] . . . [a] claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) [alleging] . . . a pattern of facts that is well within the mainstream of constitutional litigation." *Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982). Fair presentation includes petitioning for discretionary review in the state's highest appellate court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 839–40 (1999) ("[A] state prisoner must present his claims to a state supreme court in a petition for discretionary review in order to satisfy the exhaustion requirement").

However, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotations omitted). In such cases, although the claim is technically unexhausted, the district court may deem the claim to be exhausted but procedurally barred from habeas review. *See id.* at 140 ("[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 (1991)).

Under New York law, defendants are permitted only one direct appeal. *See Dasney v. People of the State of New York*, No. 15-cv-5734 (RJS), 2017 WL 253488, at *5 (S.D.N.Y. Jan. 19, 2017) (citing N.Y. Ct. App. R. § 500.20);[6] *see also Roa v. Portuondo*, 548 F. Supp. 2d 56, 78 (S.D.N.Y. 2008) ("Any attempt to raise these claims at this stage as part of a direct appeal would be rejected because a criminal defendant is entitled to only one direct appeal and one application for leave to appeal to the Court of Appeals."). Petitioners must raise record-based claims by direct appeal rather than by a collateral motion in state court. *See, e.g.*, *O'Kane v. Kirkpatrick*, No. 09 Civ. 05167 (HB) (THK), 2011 WL 3809945, at *7 (S.D.N.Y. Feb. 15, 2011) ("[A]ll claims that are record–based must be raised in a direct appeal. . . . It is only when a defendant's claim hinges upon facts outside the trial record, that he may collaterally attack his conviction by bringing a claim under CPL § 440.10."), *report and recommendation adopted*, 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011); *Lowman v. New York*, No. 09-CV- 0058T (MAT), 2011 WL 90996, at *9 (W.D.N.Y. Jan. 11, 2011) ("Collateral review of this claim—by way of another CPL § 440 motion—is also barred because the claim is a matter of record that could have been raised on direct appeal, but unjustifiably was not.)" (citing N.Y. Criminal Procedure Law ("C.P.L.") § 440.10(2)(c)).[7]

To avoid the procedural default of an unexhausted claim, a petitioner may show "cause for the default and prejudice, or that failure to consider the claim will result in miscarriage of

---

[6] This rule states, in relevant part, that a letter application for leave to appeal "shall indicate . . . (2) that no application for the same relief has been addressed to a justice of the Appellate Division, as *only one application is available*." N.Y. Ct. App. R. 500.20(a) (emphasis added).

[7] N.Y. C.P.L. § 440.10(2)(c) states, in relevant part, that a court must deny a § 440.10 motion to vacate judgment when "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him. . . ."

justice, *i.e.*, the petitioner is actually innocent." *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003).

**B. Adequate and Independent State Grounds as a Procedural Bar**

"It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman*, 501 U.S. at 729). This preclusion applies even if the state court alternatively rules on the merits of the federal claim, so long as there is an adequate and independent state ground that would bar the claim in state court. *See, e.g.*, *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *accord Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999).

"A state court decision will be 'independent' when it 'fairly appears' to rest primarily on state law." *Taylor v. Connelly*, 18 F. Supp. 3d 242, 253 (E.D.N.Y. 2014) (quoting *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006)). Typically, a ground is adequate "only if it is based on a rule that is 'firmly established and regularly followed' by the state in question." *Garcia*, 188 F.3d at 77 (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)); *see also Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003). A decision that a state procedural rule is inadequate should not be made "lightly or without clear support in state law." *Garcia*, 188 F.3d at 77 (internal quotations omitted). However, "there are 'exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.'" *Cotto*, 331 F.3d at 240 (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002)). In determining whether a case is "exceptional" in that the state ground should be held inadequate, the Second Circuit uses the following factors as "guideposts":

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule

> was demanded in the specific circumstances presented; and (3) whether petitioner had substantially complied with the rule given the realities of trial, and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Id.* (internal quotations omitted).

To avoid a procedural default based on independent and adequate state grounds, a petitioner must "show 'cause' for the default and 'prejudice attributable thereto,' . . . or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris*, 489 U.S. at 262 (quoting *Murray v. Carrier*, 477 U.S. 478, 485, 495 (1986)).

**C. AEDPA Standard of Review**

When a federal court reaches the merits of a habeas petition, AEDPA prescribes a "highly deferential" standard for reviewing state court rulings. *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Fischer v. Smith*, 780 F.3d 556, 561 (2d Cir. 2015). An application for a writ of habeas corpus:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

Courts have interpreted the phrase "adjudicated on the merits" in AEDPA as meaning that a state court "(1) dispose[d] of the claim on the merits, and (2) reduce[d] its disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (internal quotations omitted). Courts examine the "last reasoned decision" by the state courts in determining whether a federal

claim was adjudicated on the merits. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

If a state court adjudicates a federal claim on the merits, the Court must apply AEDPA deference to that state court ruling.[8] 28 U.S.C. § 2254(d)(1)–(2). In the context of AEDPA deference, the phrase "clearly established Federal law" means "the holdings, as opposed to the dicta, of [the Supreme Court of the United States'] decisions as of the time of the relevant state–court decision." *Williams v. Taylor*, 529 U.S. 362, 365 (2000). "A state court decision is contrary to such clearly established federal law if it 'applies a rule that contradicts the governing law set forth in the Supreme Court's cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from its precedent.'" *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015) (quoting *Boyette v. Lefevre*, 246 F.3d 76, 90 (2d Cir. 2001)). A state court decision involves an "unreasonable application" of Supreme Court precedent if: (1) "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.

For a federal court to find a state court's application of Supreme Court precedent unreasonable, the state court's decision must have been more than "incorrect or erroneous" — it

[8] If, by contrast, a state court does not adjudicate a federal claim on the merits, "AEDPA deference is not required . . . [and] conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo." *DeBerry v. Portuondo*, 403 F.3d 57, 66–67 (2d Cir. 2005).

must have been "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). In other words, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of [the state court's] decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004)). However, "the trial court's decision need not teeter on 'judicial incompetence' to warrant relief under § 2254(d)." *Alvarez v. Ercole*, 763 F.3d 223, 229 (2d Cir. 2014) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). If a state court decision does not contain reasons for the dismissal of a defendant's federal claim, the Court must "consider 'what arguments or theories . . . could have supported[] the state court's decision,' and may grant habeas only if 'fairminded jurists could [not] disagree that those arguments or theories are inconsistent with the holding in a prior decision of' the Supreme Court." *Lynch v. Superintendent Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (alterations in original) (quoting *Richter*, 562 U.S. at 102).

When reviewing an application for a writ of habeas corpus, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting the state court's factual holding by "clear and convincing evidence." *Id.*; *see also Chapman v. Vanzandt*, No. 96 CIV. 6940 (JGK), 1997 WL 375668, at *4 (S.D.N.Y. July 8, 1997).

## III. DISCUSSION

Petitioner argues that the State violated his constitutional right to be free from unreasonable searches and seizures under the Fourth Amendment by arresting him without probable cause and then seizing evidence incident to that arrest, which was later used against him at trial. In support of this argument, Petitioner asserts that defense counsel established at the Omnibus Motion Hearing that his arrest was based on conflicting statements and observations

made at the scene of the accident, much of which was not communicated to the arresting officer until after Petitioner was already arrested. (Docket No. 2 at 10-11). Petitioner further argues that the arresting officer: (1) did not learn that another officer observed Petitioner about to strike Mr. Aldana until after the arrest; (2) was not told that other officers observed Petitioner restraining Mr. Aldana until after the arrest; (3) only observed blood on Petitioner's friend's clothing and not on his; and (4) was told by Mr. Aldana at the scene of the accident that it was Petitioner's friend that assaulted and stole money from him, without implicating Petitioner. (*Id.* at 7-8). Petitioner maintains that because of this his arrest lacked probable cause and the evidence collected incident to it (specifically, his clothing) should have been suppressed, and the trial court's refusal to do so violated the Fourth Amendment. In response, Respondent concedes that Petitioner's claim is exhausted for purposes of habeas review since it was raised both to the Second Department and Court of Appeals, but argues that it is: (1) not cognizable; and (2) entirely meritless, as police had probable cause to arrest Petitioner and the arresting officer was not required to have personal knowledge of each fact establishing probable cause as long as the police, in general, had it at the time of Petitioner's arrest. The Court agrees with Respondent, and Petitioner's claim should be denied.

First, Fourth Amendment claims are only eligible for habeas relief in rare circumstances. Specifically, the Second Circuit has held that "review of fourth amendment claims in habeas petitions [may] be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992); *accord Cutts v. Miller*, 19-cv-10721 (LJL), 2021 WL

242891, at *6 (S.D.N.Y. Jan. 25, 2021) (same). Petitioner cannot establish either since New York has extensive corrective measures for challenging allegedly illegal arrests, *Elliot v. Kirkpatrick*, 17 Civ. 7529 (KPF), 2020 WL 6690650, at *5 (S.D.N.Y. Nov. 13, 2020) ("there is no basis for [arguing that New York lacks corrective measures for challenging illegal arrests] . . . as the Second Circuit has indicated that New York's procedure for litigating Fourth Amendment claims is facially adequate") (internal quotation omitted), and Petitioner has made no attempt to show a breakdown in these measures.

In fact, Petitioner utilized New York's corrective measures by filing an omnibus motion prior to trial that asserted an identical Fourth Amendment argument. After holding a hearing on the claim, the Westchester County Court denied it, finding that the police had probable cause to arrest Petitioner since they: (1) "were aware of a radio call describing a motor vehicle accident and a possible robbery and assault;" (2) "observed blood on" Petitioner's friend's clothing; (3) observed Petitioner standing over the victim ready to strike him; and (4) were informed by the victim that Petitioner's friend had assaulted and robbed him. (Docket No. 10-5 at 4). Petitioner appealed this decision to the Second Department, which affirmed it. *Lopes*, 163 N.Y.S.3d at 846 ("[c]ontrary to the defendant's contention, the hearing court properly determined that the police officers had probable cause to arrest him.") He raised the issue again in his letter application to the Court of Appeals for leave to appeal the Second Department's decision, which was also denied. *Lopes*, 171 N.Y.S.3d at 432.

Thus, the State afforded Petitioner numerous opportunities to challenge the propriety of his arrest under the Fourth Amendment. His failure to prevail on this claim is not evidence of a breakdown in New York's corrective processes. However, it is a bar to habeas relief. *See Capellan*, 975 F.2d at 72 ("mere disagreement with the outcome of a state court ruling is not the

equivalent of an unconscionable breakdown in the state's corrective process"); *accord Cotto v. Fischer*, No. 09 CV. 9813 (SAS)(MHD), 2012 WL 5500575, at *22 (S.D.N.Y. Aug. 23, 2012) ("[t]he state court's decision that there was probable cause to arrest [Petitioner] and its refusal to suppress the money evidence after a *Mapp* hearing is not an unconscionable breakdown just because probable cause was found and the suppression motion was denied"), *report and recommendation adopted sub nom.*, *Cotto v. Fisher*, 2012 WL 5499890 (S.D.N.Y. Nov. 12, 2012). Consequently, Petitioner's Fourth Amendment claim is not cognizable on habeas review and should be denied.

Second, even assuming, *arguendo*, that Petitioner's Fourth Amendment claim was cognizable on habeas review, it is entirely meritless. At the time of Petitioner's arrest, the police: (1) received a report from an eyewitness that an assault and robbery was in progress where Petitioner was found; (2) observed Petitioner holding the victim down while about to strike him; (3) observed blood on Petitioner's friend's clothing; (4) found the victim lying partially in his car and partially on the ground with signs that he been severely beaten; and (5) were told by the victim that Petitioner's friend was responsible for the robbery and assault. (Docket No. 10 at 9). Considering these facts together, there was probable cause to justify Petitioner's arrest. *People v. Deale*, 40 N.Y.S.3d 71, 72 (1st Dep't 2016) ("probable cause does not require certainty, and the totality of the circumstances [may] provide[] probable cause for defendant's arrest"); *see also Thompson v. City of New York*, 23 N.Y.S.3d 839, 848 (Sup. Ct., Bronx Cnty. 2015) ("[p]robable cause, also defined as reasonable cause, exists '[w]here an officer, in good faith, believes that a person is guilty of a felony, and his belief rests on such grounds as would induce an ordinarily prudent and cautious man, under the circumstances, to believe likewise'") (quoting *Smith v. Nassau Cnty.*, 355 N.Y.S.2d 349, 353 (1974)).

Petitioner's argument that an arresting officer must personally possess the information establishing probable cause is incorrect. New York has adopted a version of the "fellow officer" rule which "permits the imputation of knowledge from one officer to another, among officers working in a joint assignment despite the lack of an express communication of information or direction to take action" when evaluating whether there was probable cause to effectuate an arrest. *People v. Starr*, 634 N.Y.S.2d 132, 134 (2d Dep't 1995); *cf. People v. Moziy*, 89 N.Y.S.3d 3, 4 (2d Dep't 2018) ("[c]ontrary to the defendant's contention, his arrest was supported by probable cause . . . [where] upon receiving information regarding a call to the 911 emergency number . . . the arresting officers came upon the defendant exiting from the rear door of the complainant's home, wearing black gloves and holding a screwdriver and safe"). What matters is that the police, as a whole, have sufficient information to support probable cause—not that the arresting officer alone does. *See People v. Stroman*, 964 N.Y.S.2d 766, 768 (3d Dep't 2013) ("[A]n arresting officer may rely on information obtained from a fellow officer so long as the police as a whole were in possession of information sufficient to constitute probable cause to make the arrest") (internal quotation omitted).

Federal courts follow a similar rule, known as the "collective knowledge doctrine." *Borges v. City of New York*, 621 F. Supp. 3d 362, 371 (E.D.N.Y. 2022) ("'The collective knowledge doctrine provides that, for the purpose of determining whether an arresting officer has probable cause to arrest, where law enforcement authorities are cooperating in an investigation, the knowledge of one is presumed shared by all.'") (quoting *Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003)). Therefore, Petitioner's argument that his arrest lacked probable cause because the arresting officer did not have personal knowledge of the facts implicating Petitioner, fails as a matter of law.

Accordingly, I respectfully recommend that Petitioner's Fourth Amendment claim be denied.

## IV. CONCLUSION

For the foregoing reasons, I conclude and respectfully recommend that the Petition be denied. Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

The Clerk of Court is requested to mail a copy of this Report and Recommendation to the *pro se* Petitioner.

## V. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts, the parties shall have fourteen (14) days from the receipt of this Report and Recommendation to serve and file written objections. If copies of this Report and Recommendation are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of the same to file and serve written objections. *See* Fed. R. Civ. P. 6(d). Objections and responses to objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Cathy Seibel at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Requests for extensions of time to file objections must be made to the Honorable Cathy Seibel and not to the undersigned. Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be rendered. *See* 28 U.S.C. § 636(b)(1); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

Dated: October 11, 2023
White Plains, New York

**RESPECTFULLY SUBMITTED,**

Judith C. McCarthy
JUDITH C. McCARTHY
United States Magistrate Judge